IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES SYLVESTER JONES | : | |
| Petitioner | : | Criminal No. L-97-0248 |
| | : | |
| v. | : | Civil No. L-03-2985 |
| | : | |
| UNITED STATES OF AMERICA | : | |
| Respondent | : | |

REVISED MEMORANDUM[1]

Pending is pro se petitioner James Sylvester Jones's ("Jones") motion to vacate, set aside

or correct his sentence pursuant to 28 U.S.C. § 2255.  For the reasons set forth below, the Court

will, by separate Order, DENY Jones's motion and DIRECT the Clerk to CLOSE the case.

I.      **Background**

On July 3, 1997, a federal grand jury for the State and District of Maryland handed down

a fourteen-count indictment against nine defendants, including two counts against Jones.[2]  Count

One charged Jones with conspiring to distribute cocaine and cocaine base and possession with

intent to distribute the same, in violation of 21 U.S.C. § 846.  Count Four charged him with

---

[1]      On March 28, 2007, this Court issued its Memorandum and Order in this case.  Both documents included a typographical error.  The Civil File Number assigned to Jones's case is L-03-2985, not L-03-2895.  The revised memorandum and order, both dated April 4, 2007, fixes the error.

[2]      Eight additional co-defendants were indicted in the same grand jury hearing, including co-defendant Gregory Duffy.

distributing cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1) and aiding and

abetting the distribution of cocaine and cocaine base in violation of 18 U.S.C. § 2.

In the fall of 1999, Jones and one of his co-defendants, Gregory Duffy, were tried over a 12-day

period.[3]  On September 21, 1999, the jury convicted Jones on Counts One and Four.  On April

11, 2000, the Court sentenced him to 292 months in prison and 5 years of supervised release on

each count.  The sentences were to run concurrently.

      Jones appealed his convictions to the United States Court of Appeals for the Fourth

Circuit.  In an opinion dated March 11, 2002, the appellate court affirmed Jones's and Duffy's

convictions.  United States v. Duffy, 30 Fed.Appx. 240, 246-47 (4th Cir. 2002) (unpublished).

      The Court remanded for re-sentencing, however.  When Jones was arrested, the police

found at his house a loaded AK-47, two loaded handguns, ammunition, and magazines.  At

sentencing, this Court increased Jones's base offense level on a finding that he possessed the

firearms in connection with his drug offenses.  See U.S.S.G. § 2D1.1(b)(1).  On appeal, the

Fourth Circuit concluded that the government had failed to carry its burden of establishing the

required connection between the possession of the firearms and the commission of the drug

offenses.  On remand, this Court re-sentenced Jones to 235 months on each count, to run

concurrently.

---

    [3]     Co-defendant Duffy was convicted on two counts and sentenced to concurrent
terms of 235 months imprisonment.  United States v. Duffy, 30 Fed.Appx. 240, 240 (4th Cir.
2002) (unpublished).

In its opinion, the Fourth Circuit reviewed the trial evidence.  The Court found that the government's proof against Duffy and Jones came primarily from the testimony of three cooperating co-conspirators, James Cephas, Troy Perkins, and James Deshields.  Perkins worked undercover for the DEA during the investigation, and the cooperating witnesses' testimony was corroborated by recordings of meetings and telephone conversations between Perkins and the defendants.  The appellate opinion states, "[i]n general terms, the testimony of Cephas, Perkins, and Deshields established that Jones supplied large quantities of cocaine powder to various members of the conspiracy, including Cephas, Perkins, and Demetrius Davis."  Id. at 242.

On appeal, Jones conceded that he was a dealer of cocaine powder who sold to other drug dealers.  He contended, however, that he was not involved in the sale of crack cocaine, and that there was no evidence from which it could be inferred that he knowingly became a member of a crack cocaine conspiracy.  Id. at 243.  The Fourth Circuit disagreed, pointing to evidence that Jones consistently "fronted" large quantities of drugs to various members of the conspiracy, and that Jones was well aware that the cocaine power was being converted to crack.[4]  In the language of the opinion, "[t]his evidence is sufficient to connect Jones to the conspiracy to distribute crack, even if Jones himself never sold crack."  Id. at 247.

---

[4]     Co-conspirator Cephas testified that when one batch of powder did not cook properly, he complained to Jones and cooked a gram in front of Jones to show him what was happening.  Jones also gave co-conspirator Deshields advice about how to cook the powder in an oil base.  Id. at 247.

On October 20, 2003, Jones filed this § 2255 motion as a <u>pro se</u> litigant.[5]  Construed

liberally, Jones's motion alleges that his attorney, Arcangelo Tuminelli,[6] provided ineffective

counsel because he:

(i)     failed to request an instruction requiring the jury to determine the type and quantity of drugs associated with his crime as elements of the offense pursuant to <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and <u>Jones v. United States</u>, 526 U.S. 227 (1999),

(ii)    failed to call Demetrius Davis to testify on Jones's behalf,

(iii)   failed to investigate the potential testimony of Frank Dickerson and Ned Trader,

(iv)    failed to object to the admission of drugs sales outside the time frame of the conspiracy in the indictment,

(v)     failed to object to the admission of firearms seized from Jones's house, and

---

[5]      The Antiterrorism and Effective Death Penalty Act of 1996 instituted a one-year statute of limitations under 28 U.S.C. § 2255.  The statute of limitations begins to run when the petitioner's conviction becomes final.  If the defendant declines to pursue further direct appellate review, a conviction becomes final under § 2255 on the date the district court enters the judgment of conviction.  <u>United States v. Sanders</u>, 247 F.3d 139, 142-143 (4th Cir. 2001).  Jones's conviction became final on July 23, 2002, when he was re-sentenced.  He did not appeal.  Accordingly, he had until July 23, 2003 to file his habeas corpus petition.
         The Court received Jones's petition on October 20, 2003, almost three months after the statute of limitations expired.  A motion is deemed to be filed, however, on the date it is placed in the prison mail room.  <u>Houston v. Lack</u>, 487 U.S. 266, 272-73 (1988).  Jones claims that he mailed the motion on or about July 2 or 3, 2003.  He attached an affidavit from a witness who saw him place it in the mailbox.  Additionally, the petition is dated July 5, 2003.  Jones explains that he postdated it because of the holiday weekend.  The government has not objected on limitations grounds.  Accordingly, the Court finds that Jones's motion is timely.

[6]      Tuminelli represented Jones at his trial and initial sentencing.  During Jones's appeal to the United States Court of Appeals for the Fourth Circuit, the appellate court relieved Mr. Tuminelli of his court-appointed service and appointed Marc Sequinot, Esquire.  Jones has not alleged that Sequinot provided ineffective assistance.

(vi)   coerced Jones into making a proffer to the government.

## II.   Standard

An ineffective assistance of counsel claim is evaluated under the <u>Strickland</u> two-prong test, which requires Jones to show (i) that counsel's performance was deficient, and (ii) that counsel's deficient performance prejudiced him.   <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).   To establish the first prong, Jones must produce evidence that his counsel's performance was not "within the range of competence demanded of attorneys in criminal cases."   <u>Id.</u>   For the second prong, Jones must show that but for his attorney's deficient performance, the result of the proceedings would have been different.   <u>Id.</u>   The Court can address either the prejudice or effectiveness prong first, and if it finds that Jones cannot satisfy one of the prongs, the Court's inquiry ends and the petition is dismissed.   <u>Id.</u> at 697.

## III.   Analysis

### A.   <u>**Apprendi**</u> **and** <u>**Jones**</u> **Claims**

Jones alleges that Tuminelli provided ineffective assistance of counsel because he failed to request a jury instruction regarding drug type and quantity.   Because the jury never made a finding as to drug type or quantity,[7] Jones claims, the Court could not use those factors to enhance his sentence beyond 240 months, the maximum sentence permitted under 21 U.S.C. §

---

[7]   Jones's contention that the jury made no finding as to drug type is frivolous.   The jury found him guilty of  conspiring to distribute cocaine and aiding and abetting the distribution of cocaine.

841(b)(1)(C).  Accordingly, Jones believes his initial sentence of 292 months per count was unconstitutional.

Jones's claim fails for two reasons.  It is true that in <u>Apprendi</u> the Supreme Court found that any fact, other than a prior conviction, that increases the penalty for a crime <u>beyond</u> the prescribed statutory maximum must be submitted to jury and proved beyond reasonable doubt. <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 476 (2000).  The Supreme Court, however, did not hand down its decision in <u>Apprendi</u> until after Jones's initial sentencing.  It is a well-established principle that counsel need not predict future changes in the governing law to be judged competent.  <u>Strickland</u>, 466 U.S. at 668, 689 (1984) ("Counsel is not required to forecast changes in the governing law.").  Therefore, under <u>Strickland</u>, Tuminelli's failure to predict <u>Apprendi</u> does not constitute an unprofessional performance.

Second, Jones's argument is now moot.  Jones's first sentence was vacated, and he was ultimately sentenced to 235 months on each count, to run concurrently.  This sentence is less than the statutory maximum of 240 months.  Jones admits that the sentence ultimately imposed on him does not violate <u>Apprendi</u>.[8]  Accordingly, his claim fails.

### B.    Failure to Call Witnesses

Jones alleges that Tuminelli provided ineffective assistance because he failed to call three witnesses, who, according to Jones, would have testified in his defense.  These witnesses are

---

[8]     Jones states in his Reply: "Jones received a revised sentence of 235 months and actually within the 240 months restriction under <u>Apprendi</u>."

former co-defendant Demetrius Davis, as well as Frank Dickerson and Ned Trader.

### 1.    Demetrius Davis

Demetrius Davis was a co-defendant and co-conspirator in the initial indictment against Jones.  Jones claims that Davis would have testified that he and Jones had no drug relationship during the period charged in the indictment.

At trial, Tuminelli advised the Court that he wished to call Davis to testify in the defense case.  The Court held a hearing out of the presence of the jury, during which Davis and his attorney participated.[9]   Tuminelli outlined the testimony that he wished to elicit from Davis. Davis's attorney advised the Court that if called to testify, Davis would invoke the Fifth Amendment.  Davis himself affirmed that he would decline to answer the questions that Tuminelli wished to ask him.[10]  The Court ruled that Davis's invocation of the Fifth Amendment was proper.[11]  Because Tuminelli did attempt to call Davis, Jones's claim fails.[12]

### 2.    Ned Trader and Frank Dickerson

Jones next claims that Tuminelli should have called two other witnesses, Frank Dickerson and Ned Trader.  Dickerson was a drug dealer who, in November of 1997, was arrested in possession of a kilogram of cocaine.  U.S. v. Dickerson, 39 Fed.Appx. 850, 854 (4th

---

[9]      Govt. Response, Ex. 6, p. 1118 (Docket No. 298).

[10]     Govt. Response, Ex. 3, p. 51 (Docket No. 298).

[11]     Govt. Response, Ex. 6, p. 1118 (Docket No. 298).

[12]     Govt. Response, Ex. 6, p. 1118 (Docket No. 298).

Cir. 2002) <u>cert. denied</u>, 537 U.S. 1134 (2003).  After Dickerson's arrest, Jones wired $7,500 from his personal bank account to Dickerson's criminal defense attorney.  Jones also made a $5,000 cash payment to a second criminal defense attorney working on Dickerson's behalf.  At trial, the government introduced evidence of these transactions to show a connection between Jones and Dickerson, a major drug dealer.

In his instant motion, Jones contends that there were innocent explanations for some of the transactions.  Jones states that he owed Dickerson $3,000 for money he used to buy disc jockey equipment.  He also claims to have paid one of Dickerson's criminal defense attorneys $5,000 as a favor to Dickerson's parents.  Jones offers no explanation for the $7,500 wire transfer to the second Dickerson defense attorneys, however.

Jones offers no affidavit or detailed proffer as to the contents of Trader's testimony. Apparently, Trader would have corroborated that Jones owed Dickerson $3,000 from the equipment loan.  Jones does offer an affidavit from Dickerson, who represents that Jones never sold him drugs, that Jones gave him money to repay the equipment loan, and that Jones gave Dickerson's attorney $5,000 as a favor to Dickerson's parents, who were short on cash.

From a <u>Strickland</u> standpoint, there are fatal flaws to Jones's argument.  As mentioned, he offers no affidavit from Trader, so we do not know what he would have testified to if called. Although Dickerson did provide an affidavit, he does not state that he would have waived his Fifth Amendment rights and testified on Jones's behalf.  Dickerson was under indictment during Jones's trial.  <u>See</u> <u>Dickerson</u>, 39 Fed.Appx. at 852-54.  He was subsequently convicted and is

now serving a 360 month prison sentence.  Dickerson did not testify at his own trial.  Had

Dickerson testified at Jones's trial, Dickerson would have opened himself to vigorous cross-

examination on his own drug dealing.  Id.

Even assuming arguendo that Dickerson and Trader would have testified, their evidence

would, on balance, have been damaging to Jones.  They would have corroborated and

emphasized Jones's personal and financial relationship with Dickerson, a major drug supplier.

Moreover, their testimony would have addressed only a small portion of the government's

evidence, offering no explanation, for example, why Jones wired Dickerson's attorneys $7,500.

Given the substantial evidence against Jones, Trader's testimony would not have changed the

outcome of Jones's case.

**C.     Failure to object to admission of drugs seized outside time frame of indictment**

Jones makes a bare contention that Tuminelli should have objected to evidence of drug

sales that predated the time frame charged in the conspiracy count.  He does not describe the

evidence.  He fails to offer any record references.  He does not state why the evidence was

unduly prejudicial.  He makes no case that the evidence, even if it did predate the conspiracy,

was inadmissible.  He has, therefore, failed to establish that the exclusion of this unexplained

evidence would have changed the outcome of his case.

**D.     Failure to object to admission of firearms seized from Jones's house**

In his motion, Jones makes the bare and unsupported allegation that evidence of the

firearms seized from his house was improperly admitted and that it prejudiced the jury against

him.  He contends, without elaboration, that Tuminelli provided ineffective assistance of counsel because he failed to object to the evidence.

It is the Court's recollection that Jones is wrong and that Tuminelli did, in fact, object to the firearm evidence.  Neither the government nor Jones have supplied the relevant transcript references, however.  Nevertheless, this issue can be decided without burdening the parties with additional briefing.

On appeal, the Fourth Circuit decided that the government had failed to prove that Jones had possessed the firearms in connection with his drug offenses within the intendment of U.S.S.G. § 2D1.1(b)(1).  For example, there was no evidence that Jones was known to carry a gun during drug transactions.  Duffy, 30 Fed.Appx. at 250.  This does not mean, however, that the firearms evidence should have been excluded at trial or that the evidence was inflammatory.

As the Fourth Circuit has observed, "drugs and guns all too often go hand in hand," United States v. Lomax, 293 F.3d 701, 706 (4th Cir. 2002), and "have become tools of the trade in illegal narcotics operations."  United States v. White, 875 F.2d 427, 433 (4th Cir. 1989) (citations omitted).  The government was entitled to attempt to make that point during trial.  Tuminelli argued to the jury that Jones, like many Americans, was a gun collector.  The jury was given both sides of the argument.  Moreover, the firearms evidence was not inflammatory.  The government neither alleged nor argued that Jones used the guns to harm or threaten anyone.  Given the wealth of evidence against Jones, it cannot be said that exclusion of the firearms would have changed the outcome of the case.

### E.      Attorney coerced Jones into waiving his right against self-incrimination

Finally, Jones alleges that Tuminelli coerced him into making a proffer to the government prior to trial as part of an effort to reach a plea agreement.[13]   The proffer, Jones claims, made it impossible for him to take the stand on his own behalf at trial.

In opposing the claim of coercion, the government points to Tuminelli's statement to the Court at trial that Jones was initially reluctant to make a proffer, but that he eventually decided to make one in order to obtain the advantages of a plea agreement.  Tuminelli said that Jones expressed annoyance with him after the proffer session because the government had, in Jones's view, attempted to get him to "acknowledge and admit things that he never was involved in."[14] The government counters that plea discussions broke down because of its belief that Jones had been untruthful during the proffer session.[15]

The Court need not hold a hearing to decide Jones's claim of coercion.  Jones suffered no prejudice from the proffer session.  When a defendant makes a proffer, the government is not

---

[13]      Jones also argues that by permitting the proffer, Tuminelli provided such egregiously ineffective assistance that Jones's Sixth Amendment rights were violated within the meaning of United States v. Chronic, 466 U.S. 649 (1984).  Under Chronic, "when a true adversarial criminal trial has been conducted-even if defense counsel may have made demonstrable errors-the kind of testing envisioned by the Sixth Amendment has occurred."  Id. at 657.  In this case, Tuminelli's representation has vigorous and effective.  Jones was not denied an adversarial criminal trial.

[14]      Govt. Response, Ex. 5, p. 1129 (Docket No. 298).

[15]      Govt. Response, p. 10 (Docket No. 298).

permitted to use the proffer as evidence at trial unless the defendant takes the stand and testifies

in a manner that is inconsistent with the proffer.  So long as the defendant testifies consistently,

the proffer session is never presented to the jury.  Jones, therefore, can only be complaining that

the existence of the proffer session inhibited his ability to take the stand at trial and fabricate a

story inconsistent with the one that he presented to the prosecutors.  Thus, Tuminelli was not

ineffective and Jones suffered no prejudice.

## IV.   Conclusion

For the foregoing reasons, the Court will, by separate order, DENY Jones's motion and

DIRECT the Clerk to CLOSE the case.  Should Jones choose to appeal the judgment of this

Court to the Fourth Circuit, he is ADVISED that he must file a notice of appeal with the Clerk of

this Court within 60 days after the date of the entry of the judgment order.  Upon reviewing the

notice of appeal, this Court will either issue a certificate of appealability or state why a

certificate should not issue in accordance with Federal Rule of Appellate Procedure 22(b)(1).  If

this Court should deny certification, Jones may request a circuit judge of the  Fourth Circuit to

issue the certificate.


Dated this 4th day of April 2007.                                  /s/

                                                         _____

                                                         Benson Everett Legg
                                                         Chief Judge